UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| S. B., *for themselves and on behalf of* A.M, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 22-cv-10056-ADB |
| BUREAU OF SPECIAL EDUCATION | * | |
| APPEALS, et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff S.B., on her own behalf and on behalf of her minor child, A.M. (collectively, "Plaintiffs"), alleges that defendant Concord Public Schools ("CPS") has unlawfully refused to enroll A.M. as a student because he has autism.  See [ECF No. 41 ("Amended Complaint" or "Am. Compl.")].  Presently before the Court is CPS's motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted.  [ECF No. 49].  For the reasons that follow, the motion is GRANTED, and this action is DISMISSED.

The Amended Complaint is in four counts.  In Count I, Plaintiffs seek relief under the following statutes: (1) the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400, et seq.; (2) Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; (3) Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and (4) Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d.  [Am. Compl. ¶¶ 7–17].  Count II is a claim for the violation of the right to due process.  [Id. ¶¶ 18–20].  In Count III, Plaintiffs seek relief under Massachusetts General Laws ch. 93, § 102 and Article 12 of the Massachusetts

Declaration of Rights.  [Id. ¶¶ 21–22].  Finally, Count IV is a breach of contract claim.  [Id. ¶¶ 23–25].  In their prayer for relief, Plaintiffs seek "compensatory and punitive damages; reasonable attorney's fees[;]" and "such other and further order as may be just and equitable." [Id. at 4].

## I.      STATUTORY FRAMEWORK

### A.      IDEA

The IDEA "offers States federal funds to assist in educating children with disabilities." Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1, 580 U.S. 386, 390 (2017).  "In exchange for the funds, a State pledges to comply with a number of statutory conditions," including "provid[ing] a free appropriate public education—a FAPE, for short—to all eligible children."  Id. (citing 20 U.S.C. § 1412(a)(1)).  A FAPE includes specialized instruction to meet the needs of each eligible child as well as support services required to assist the child to benefit from said instruction.  See id. at 390–91; 20 U.S.C. §§ 1401(9).  An individual education program ("IEP") "serves as the 'primary vehicle' for providing each child with the promised FAPE."  Fry v. Napoleon Cmty Schs., 580 U.S. 154, 158 (2017) (quoting Honig v. Doe, 484 U.S. 305, 311 (1988)); see also 20 U.S.C. § 1414(d).

When parents and school representatives cannot agree on a child's eligibility for a FAPE or the terms or implementation of the FAPE (as set forth in the IEP), the parents may "demand[] an administrative due process hearing before a designated state educational agency."  Doe v. Newton Pub. Schs., 48 F.4th 42, 48 (1st Cir. 2022) (quoting D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 35 (1st Cir. 2012)); see also 20 U.S.C. § 1415(f)(1)(A).  In Massachusetts, the entity that conducts such proceedings is the Bureau of Special Education Appeals ("BSEA"). See Mass. Gen. Laws ch. 71B, § 2A.  "Any decision of the officer [of the state educational agency] granting substantive relief must be 'based on a determination of whether the child

received a [FAPE].'"  Fry, 580 U.S. at 159 (alteration in original) (quoting 20 U.S.C.

§ 1415(f)(3)(E)(i)).  A party that is dissatisfied with the outcome of the administrative process

may seek judicial relief by filing a civil action in state or federal court.  See 20 U.S.C.

§ 1415(i)(2)(A).

Money damages are not available under the IDEA, see Roe v. Healey, 78 F.4th 11, 16

(1st Cir. 2023), although "[a]wards of compensatory education and equitable remedies that

involve the payment of money, such as reimbursements to parents for expenses incurred on

private educational services to which their child was later found to have been entitled, remain

available," Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 124 (1st Cir. 2003).  The "IDEA's

primary purpose is to ensure a FAPE, not to serve as a tort-like mechanism for compensating

personal injury."  Id.[1]

### B.      ADA, Section 504 of the Rehabilitation Act, and Title VI

Title II of the ADA provides that "no qualified individual with a disability shall, by

reason of such disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be subjected to discrimination by any such

entity."  42 U.S.C. § 12132.  Similarly, Section 504 of the Rehabilitation Act provides that "[n]o

otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability,

be excluded from the participation in, be denied the benefits of, or be subjected to discrimination

under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C. § 794.

Title VI provides: "No person in the United States shall, on the ground of race, color, or

national origin, be excluded from participation in, be denied the benefits of, or be subjected to

---

[1] The IDEA permits a court to award reasonable attorney's fees to a prevailing party.  See 20
U.S.C. § 1415(i)(3)(B)(i).

discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C.
§ 2000d.

## II.        STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must comply with Federal Rule of Civil
Procedure 8(a)(2), see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), which requires
that a complaint include a "a short and plain statement of the claim showing that the pleader is
entitled to relief," Fed. R. Civ. P. 8(a)(2).  The "fundamental purpose" of this pleading rule "is to
protect a defendant's inalienable right to know in advance the nature of the cause of action being
asserted against him." Martinez v. Petrenko, 792 F.3d 173, 179 (1st Cir. 2015) (quoting Ruiz
Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 84 (1st Cir. 2008)); see also Twombly, 550 U.S. at
555 ("short and plain" statement of the claim must provide a defendant with "fair notice of what
the . . . claim is and the grounds upon which it rests" (alteration in original) (citation omitted)).

"The complaint must provide this notice not with mere 'conclusions,' but rather with
'factual content that allows the court to draw the reasonable inference that the defendant is liable
for the misconduct alleged.'" Martinez, 792 F.3d at 179 (quoting Ashcroft v. Iqbal, 556 U.S.
662, 678 (2009)).  Pleadings that "are no more than conclusions[] are not entitled to the
presumption of truth." Iqbal, 556 U.S. at 679.  "While legal conclusions can provide the
framework of a complaint, they must be supported by factual allegations." Id.  "If the factual
allegations in the complaint are too meager, vague, or conclusory to remove the possibility of
relief from the realm of mere conjecture, the complaint is open to dismissal." S.E.C. v.
Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (citing Twombly, 550 U.S. at 555).  "When there

are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Iqbal, 556 U.S. at 679.[2]

Because Plaintiffs are not represented by an attorney, the Court construes the Amended Complaint more liberally than pleadings drafted by lawyers.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

III.     **BACKGROUND**

A.     **Allegations in the Amended Complaint**

The following allegations are drawn from the Amended Complaint.

At some point, S.B. sought to enroll A.M. in CPS.  A CPS supervisory official, "motivated by discriminatory animus against A.M.," indicated to S.B. that "because of his autism, A.M. would not be enrolled in CPS."  [Am. Compl. ¶ 8].  "The circumstances surrounding CPS'[s] initial exclusion of A.M. from its school system and its later repeated denials of admission to A.M., give rise to an inference of invidious discrimination."  [Id. ¶ 9].  "CPS, in 2019 and continuing to 2021, refused to enroll [A.M.], out of discriminatory animus . . . ."  [Id. ¶ 10].

In or around 2021, Plaintiffs "filed a petition with the BSEA, in which they raised [CPS]'s violations of federal and state law . . . concerning CPS'[s] continued campaign of discriminatory exclusion of A.M. from 2019 forward," and sought "appropriate relief, including a statutorily sufficient hearing."  [Am. Compl. ¶ 11].  "BSEA . . . refused to grant [P]laintiffs a

---

[2] In her opposition to CPS's motion to dismiss, S.B. relies on the pleading standard articulated in Arroyo-Audifred v. Verizon Wireless, Inc., 431 F. Supp. 2d 215, 217 (D.P.R. 2006) ("According to the Supreme Court, a 'court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" (quoting Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002))).  [ECF No. 55 at 1].  This pleading standard was abrogated by Twombly and Iqbal.  See García-Catalán v. United States, 734 F.3d 100, 101 (1st Cir. 2013).

constitutionally and statutorily required evidentiary hearing . . . , [and] denied [P]laintiffs the

opportunity to present evidence and to cross examine CPS officials and denied the [P]laintiffs[']

the[ir] right to due process."  [Id. ¶ 12].  The administrative record of the BSEA proceedings "is

statutorily and constitutionally deficient, in that it is not the product of an evidentiary hearing."

[Id. ¶ 14].

CPS "engaged in delaying tactics, harassment of the [P]laintiffs[,] and outright mendacity

in its dealings with [P]laintiffs. . . ."  [Am. Compl.  ¶ 15].  CPS supervisory officials "have

agreed to falsify information within their purview, deprive [P]laintiffs of [the] same and to

cover-up the facts surrounding their discriminatory exclusion of A.M. from [CPS], for as long a

period of possible and throughout the adjudicatory and judicial process."  [Id. ¶ 16].

### B.     Previous State Court Proceeding

The Court takes judicial notice of S.B.'s previous state court litigation regarding CPS's

decision not to enroll A.M.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322

(2007) (stating that, when ruling on Rule 12(b)(6) motions, courts may consider "matters of

which a court may take judicial notice"); Berríos-Romero v. Estado Libre Asociado de P.R., 641

F.3d 24, 27 (1st Cir. 2011) (stating that "[a] decision of a sister court is a proper matter of

judicial notice").

In 2017, S.B. brought a lawsuit in Suffolk Superior Court against officials of CPS and

others, alleging that they had denied A.M's application to attend kindergarten for the 2014–2015

school year under the METCO program because of A.M.'s disability.  See Doe v. Murphy, No.

1784CV01642, Mem. of Decision & Order on Defs.' Mot. to Dismiss (Suffolk Sup. Ct. Oct. 15,

2018) (Dkt. No. 51).[3]  On October 15, 2018, the state court dismissed S.B.'s claims under 42

---

[3] This order is publicly available through www.masscourts.org (last visited Mar. 17, 2024).

U.S.C. § 1983, the ADA, and the Rehabilitation Act because S.B. had "failed to exhaust her administrative remedies before the BSEA as was required under the [IDEA]." Id. at 10.  In the same order, the court dismissed all other claims except for those for intentional infliction of emotional distress.  See id. at 10–15.  All claims in the action have since been disposed of, and an appeal is pending.  See Doe v. Murphy, No. 2023-P-0986 (Mass. App. Ct.).[4]

### C.    Proceedings in the BSEA[5]

In June 2021, S.B. submitted a Hearing Request with the BSEA for "[d]enial of FAPE on June 28, 2019 and continued[,]" seeking relief under Mass. Gen. Laws ch. 76, § 16, Section 504 of the Rehabilitation Act, and Title II of the ADA.  [ECF No. 32 ("Administrative Record" or "A.R.") at 199 n.9 (quoting S.B.'s Hearing Request)].  On October 18, 2021, the Hearing Officer granted CPS's motion to dismiss S.B.'s Hearing Request,  [A.R. at 196–211], dismissing with

---

The state court action was removed to this Court on September 14, 2017, but was remanded in January 2018 because not all of the defendants had consented to the removal.  See Doe v. McGuire, 289 F. Supp. 3d 266 (D. Mass. 2018).

[4] The docket of the appellate proceeding is available through www.ma-appellatecourts.org (last visited Mar. 19, 2024).

[5] The Administrative Record is sealed on this docket because it reveals A.M's name and other information implicating his privacy interests.  In this order, the Court refers only to the "Hearing Officer's Ruling on Concord Public Schools' Motion to Dismiss," [A.R. at 196–211], which is a public document.  See 20 U.S.C. 1415(h)(4)(A).  As such, it is appropriate for the Court to take judicial notice of this portion of the Administrative Record.  See, e.g., Goe v. Zucker, 43 F.4th 19, 29 (2d Cir. 2022) (finding that, in adjudicating a 12(b)(6) motion, the district court did not err in taking judicial note of administrative record); Winzler v. Toyota Motor Sales U.S.A., Inc., 681 F.3d 1208, 1213 (10th Cir. 2012) ("The contents of an administrative agency's publicly available files, after all, traditionally qualify for judicial notice, even when the truthfulness of the documents on file is another matter.").  The Court takes judicial notice of the "Hearing Officer's Ruling on Concord Public Schools' Motion to Dismiss," solely to acknowledge the relief S.B. sought with the BSEA and the agency's disposition of the proceeding.

prejudice any FAPE-related claims and declining to adjudicate any non-FAPE claims.  [Id. at 208–11].

## IV.      DISCUSSION

### A.      S.B. Cannot Represent A.M.

A threshold issue is whether S.B. can represent A.M.  The Court finds that she cannot.

Unless a party is a licensed attorney, they do not have the right to represent anyone but themself.  Although 28 U.S.C. § 1654 permits persons to proceed pro se, this provision does not allow unlicensed laypersons to represent co-plaintiffs or any other parties.  See O'Diah v. Volkswagen of Amer., Inc., 91 Fed. App'x 159, 160 (1st Cir. 2004) (per curiam).  Further, a plaintiff does not have standing to assert claims for injuries suffered by others.  See Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016) (explaining that injuries "must affect the plaintiff in a personal and individual way" to satisfy Article III standing (quoting Lujan v. Defs. Of Wildlife, 505 U.S. 555, 560 n.1 (1992))).

When a party is unable to represent themself because of age or incompetency, the party's representative may sue on the party's behalf.  See Fed. R. Civ. P. 17(c).  If, however, the representative is a non-attorney, the representative may only appear through counsel.  See O'Diah, 91 Fed. App'x at 160; Cheung v. Youth Orchestra Found. of Buffalo, Inc., 906 F.2d 59, 61 (2d Cir. 1990) (holding that non-attorney parent must be represented by counsel when bringing an action on behalf of his child).

As S.B. does not indicate that she is a licensed attorney, she cannot represent A.M.  Thus, the claims brought by S.B. on behalf of A.M. are DISMISSED without prejudice.  The Court will consider whether S.B. has articulated any viable claims for her own injuries.

**B.      S.B.'s Claims**

In general, the Amended Complaint does not contain any factual material which provides CPS adequate notice of the claims against it or from which the Court may reasonably infer that CPS violated S.B.'s rights.  See Twombly, 550 U.S. at 555; Martinez, 792 F.3d at 179.  S.B.'s assertions of CPS's wrongdoing—including a "continued campaign of discriminatory exclusion of A.M. from 2019 forward," "delaying tactics, harassment of the plaintiffs," "falsif[ying] information," and "cover-up [of] the facts surrounding their discriminatory exclusion of A.M. from the [CPS]," [Am. Compl. ¶¶ 11, 15, 16]—cannot be credited because they are vague and entirely conclusory.[6]  See Twombly, 550 U.S. at 555.  On that basis alone, the Amended Complaint fails to state a claim upon which relief may be granted.

1.      Claim under the IDEA

Because "[p]arents enjoy rights under IDEA," S.B. may "prosecute IDEA claims on [her] own behalf."  Winkelman ex rel Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 535 (2007). Here, however, the Amended Complaint does not contain any allegations implicating the IDEA. See generally [Am. Compl.].  As discussed above, claims under the IDEA seek review of a state administrative body's decision as to whether a child has received a FAPE.  See Fry, 580 U.S. at 159.  The Amended Complaint does not make any allegations concerning the denial of a FAPE. See generally [Am. Compl.].  In addition, S.B. does not seek any relief that is available under the IDEA: money damages are not available under the IDEA, see Roe, 78 F.4th at 16, and, here, S.B.

_____

[6] In addition, although S.B. refers vaguely to CPS's "later repeated denials of admission to A.M.," [Am. Compl. ¶ 8], she does not allege that, after CPS's "initial exclusion," she made subsequent requests to CPS that A.M. be enrolled.  See generally [Am. Compl.].

seeks "compensatory and punitive damages," [Am. Compl. at 4].

        2.      <u>Claim for a Violation of the Right to Due Process</u>

The Court construes S.B.'s due process claim as arising under 42 U.S.C. § 1983 ("§1983" or "Section 1983"). Section 1983 provides that any "person," acting under the color of state law, who "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983; <u>see also</u> <u>Smith v. Kentucky</u>, 36 F.4th 671, 674 (6th Cir. 2022) (stating that the "Supreme Court has never recognized a cause of action arising directly under the Constitution in a case where § 1983 was available as a remedy" (quoting <u>Thomas v. Shipka</u>, 818 F.2d 496, 500 (6th Cir. 1987))); <u>Arpin v. Santa Clara Valley Transp. Agency</u>, 261 F.3d 912, 925 (9th Cir. 2001) (stating that "a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but [rather] must utilize 42 U.S.C. § 1983"). For purposes of this statute, a "person" acting under color of state law includes a municipality, <u>see</u> <u>Monell v. N.Y.C. Dep't of Servs.</u>, 436 U.S. 658, 694 (1978), but it does not include a state, <u>see</u> <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 64 (1989).

Under the Due Process clause of the Fourteenth Amendment, a state cannot "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The essential requirements of due process . . . are notice and an opportunity to respond." <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 546 (1985). "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." <u>Id.</u>

The Amended Complaint is devoid of any non-conclusory allegations identifying the manner in which CPS violated her right to due process.  S.B. does assert that she was entitled to an evidentiary hearing in front of the BSEA, [Am. Compl. ¶¶ 12, 14], but the Amended Complaint does not, with any level of specificity, indicate how CPS (the defendant seeking dismissal), rather than the BSEA, violated her right to due process.

    3.      <u>Claims under the ADA, the Rehabilitation Act, and Title VI</u>

S.B. has not stated claims for relief under the ADA or Section 504 of the Rehabilitation Act because she does not allege that *she* has been denied participation in or benefits of a program of a public entity (or other entity receiving federal financial assistance).  <u>See</u> 42 U.S.C. § 12132; 29 U.S.C. § 794.  Rather, it is A.M. who she claims CPS excluded and discriminated against. <u>See generally</u> [Am. Compl.].

Similarly, S.B. does not state a claim under Title VI because she does not allege that she was excluded from or denied the benefit of a program receiving federal financial assistance.  <u>See</u> 42 U.S.C. § 2000d; <u>see generally</u> [Am. Compl.].

    4.      <u>Claims under Mass. Gen. Laws ch. 93, § 102 and Article 12 of the Massachusetts Declaration of Rights</u>

S.B. brings claims under Mass. Gen. Laws ch. 93, § 102 and Article 12 of the Massachusetts Declaration of Rights.  These statutes have no application to the alleged facts.

Under Mass. Gen. Laws ch. 93, § 102, everyone in Massachusetts, "regardless of sex, race, color, creed or national origin" has the "same rights enjoyed by white male citizens, to make and enforce contracts, to inherit, purchase, to lease, sell, hold and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property. . . ."  Mass. Gen. Laws ch. 93, § 102(a).  As

S.B. does not allege she has been deprived of the "same rights enjoyed by white male citizens" with regard to CPS's alleged misconduct, she has not stated a claim for relief under this statute.

Article 12 of the Massachusetts Declaration of Rights provides:

> No subject shall be held to answer for any crimes or offence, until the same is fully and plainly, substantially and formally, described to him; or be compelled to accuse, or furnish evidence against himself. And every subject shall have a right to produce all proofs, that may be favorable to him; to meet the witnesses against him face to face, and to be fully heard in his defense by himself, or his council at his election. And no subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land.
>
> And the legislature shall not make any law, that shall subject any person to a capital or infamous punishment, excepting for the government of the army and navy, without trial by jury.

Mass. Const. pt. 1, art. 12. This provision, which concerns the rights of criminal defendants, has no relevance to the present action.

5.    Breach of Contract Claim

In her breach of contract claim, S.B. alleges:

> the defendants, invidiously and in bad faith, have breached the promises made to the government of the U.S.A. (including but not limited to the provisions of the OFCCP and E.O. 11246) of which promises and pledges, the [P]laintiffs are intended beneficiaries.

[Am. Compl. ¶ 24].

S.B. has not identified a contract between CPS and the federal government that would provide her a private remedy in the form of a state law claim for breach of contract. See generally [Am. Compl.]. As to Executive Order 11,246, "it is clear that order creates no private cause of action." Campbell v. Bristol Cmty. Coll., No. CV 16-11232-FDS, 2018 WL 457172, at *3 (D. Mass. Jan. 17, 2018) (quoting Utley v. Varian Assocs., Inc., 811 F.2d 1279, 1286 (9th Cir. 1987) ("[T]he executive did not intend a private judicial remedy to redress violations of Executive Order 11,246's affirmative action program.")).

Thus, Plaintiff has failed to state a claim for breach of contract.

**V.      CLAIMS AGAINST BSEA**

Although the BSEA has not filed a motion to dismiss, the Court may, <u>sua sponte</u>, consider whether the Amended Complaint contains any allegations under which the BSEA could be held liable for S.B.'s injuries.  "[D]ismissal on the court's own initiative, without affording the plaintiff either notice or an opportunity to be heard . . . is disfavored in federal practice," but "[i]f it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a sua sponte dismissal may stand."  <u>Gonzalez-Gonzalez v. United States</u>, 257 F.3d 31, 36–37 (1st Cir. 2001).

The Court finds that <u>sua sponte</u> dismissal of all claims against the BSEA is merited in this case.  S.B.'s claim against the BSEA under the IDEA fails because she herself is not seeking a FAPE or any relief available under the statute.  Further, S.B. has not stated a claim against the BSEA for violations of the ADA or Section 504 of the Rehabilitation Act because she does not allege that she was denied participation in or the benefits of a program of a public entity (or other entity receiving federal financial assistance).  Also, any claim against the BSEA under Title VI is not viable because S.B. does not allege she was excluded from or denied the benefit of a program receiving federal financial assistance.

Further, pursuant to the Eleventh Amendment, a state is immune from lawsuits in federal court brought by its own citizens (and citizens of other states), unless the state waives that immunity or that immunity is abrogated by Congress.  <u>See</u> <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 98–100 (1984).  This immunity applies to state agencies, like the BSEA.  <u>See</u> <u>id.</u> at 100 ("[I]n the absence of consent[,] a suit in which the State *or one of its agencies or departments* is named as the defendant is proscribed by the Eleventh Amendment.") (emphasis added).  The BSEA has not waived, nor has Congress abrogated, the Commonwealth's

Eleventh Amendment immunity with regard to S.B.'s claims under state law.  See Pennhurst, 465 U.S. at 98–100.  Finally, S.B. does not identify (nor does the Court perceive) any due process claim against the BSEA that would not be barred by Eleventh Amendment immunity, and a state is not subject to suit under 42 U.S.C. § 1983.  See Will, 491 U.S. at 64.

**VI.     CONCLUSION**

In accordance with the foregoing, the Court hereby orders:

(1)     All claims brought on behalf of A.M. are <u>DISMISSED</u> without prejudice.

(2)     CPS's motion to dismiss, [ECF No. 49], is <u>GRANTED</u>.

(3)     This action is <u>DISMISSED</u>.

**SO ORDERED.**

March 28, 2024                                     */s/ Allison D. Burroughs*
                                                         ALLISON D. BURROUGHS
                                                         U.S. DISTRICT JUDGE